UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DORCAS GITHINJI and JASON SHRIVER,

Plaintiffs,

v.

OLYMPIA POLICE DEPARTMENT, et al.,

Defendants.

CASE NO. C22-5138 MJP

ORDER GRANTING DEFENDANT THURSTON COUNTY SHERIFF'S OFFICE'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Thurston County Sheriff's Office's Motion for Summary Judgment. (Dkt. No. 26.) Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 29), the Reply (Dkt. No. 31), and all supporting materials, the Court GRANTS the Motion.

**BACKGROUND**

Plaintiffs Jason Shriver and Dorcas Githinji, a married couple, pursue federal and state law claims against the Olympia Police Department (OPD) and several of its officers, as well as

the Thurston County Sheriffs' Office (TCSO) and at least one of its deputies. (See Am. Compl. (Dkt. No. 14).) The Court reviews certain factual allegations before examining the case's procedural posture.

**A. Factual Allegations**

This case arises out of an incident at Plaintiffs' home that lead to the arrest Plaintiff Jason Shriver by several members of OPD and SWAT members of the TCSO. On the evening of January 26, 2020, Shriver was under the influence of heavy painkillers prescribed to ease his recovery from shoulder surgery. (Am. Compl. ¶ 4.1.) He called 911 and asked the operator to "take away" his wife. (Id.) OPD officers responded to the call later that evening while Plaintiffs were asleep. (Id. ¶ 4.2.) Shriver told the police who arrived at the house that neither he nor his wife was engaged in domestic violence and asked the police to leave. (Id.) Officers refused to leave. (Id.) Plaintiff Dorcas Githinji then exited the house to ask the officers to leave. (Id.) The officers refused to leave and instead detained Githinji during which she repeatedly denied that there had been any domestic violence. (Id. ¶ 4.3.) Shriver continued to refuse to exit his home, and the OPD and TCSO deputies with the SWAT then used explosives and tear gas to force Shriver out of the home. (Id. ¶ 4.6.) Shriver alleges that the deputies and officers used excessive force in arresting him. (Id.)

Shriver was charged with domestic violence and spent nearly a year-and-a-half in jail awaiting his trial, during which he was barred from seeing his wife. (Id. ¶ 4.7.) The charges were dismissed in May 2021, and he was released from custody. (Id.)

**B. Procedural Posture**

Plaintiffs initially filed suit on February 22, 2022, against OPD, several individual officers, and ten "Doe" defendants who were alleged to be OPD officers, including SWAT

members. (Dkt. No. 1-1.) Prior to filing suit, Plaintiffs sent a tort claim form to OPD. (Declaration of Jonah Ohm Campbell ¶ 3 (Dkt. No. 30).)

When Plaintiffs filed their initial complaint, counsel believed that OPD was the principal for the SWAT members who participated in the arrest. (Campbell Decl. ¶ 2.) But counsel learned through discovery that the SWAT is an agency of the TCSO. (Id. ¶ 5.) In August 2022, Plaintiffs then sought to amend the complaint to add TCSO as a defendant. (Mot. to Amend. (Dkt. No. 9).) The Court granted the request and Plaintiffs filed an amended complaint naming TCSO on October 4, 2022. (Dkt. Nos. 13, 14.) TCSO filed its answer on November 22, 2022. (Dkt. No. 21.)

It is undisputed that before filing the amended complaint, Plaintiffs did not file a tort claim with TCSO. In its answer, TCSO listed as a defense that "Plaintiffs' state law claims are barred to the extent that Plaintiffs failed to file a claim for damages with Thurston County as required by law." (Answer, Affirmative Defense ¶ 12 (Dkt. No. 21).) Plaintiffs waited until January 31, 2023, to send a tort claim notice, though they did not use the County's tort claim form. (Campbell Decl. ¶ 19 & Ex. 6; Declaration of Tammy Devlin Ex. A (Dkt. No. 27-1).) On March 29, 2023, Plaintiffs sent an additional notice using the County's tort claim form, but solely on behalf of Plaintiff Githinji. (Id. ¶ 20 & Ex. 7.) No form was filed for Plaintiff Shriver.

Although TCSO identified Plaintiffs' failure to serve the pre-suit tort notice, it participated in the litigation, appearing at depositions, and seeking the deposition of one of the now-dismissed plaintiffs (Gabriel Shriver). (Campbell Decl. ¶ 10.) After being served with interrogatories and requests for production in February 2023, TCSO asked for a three-week extension, to which Plaintiffs agreed. (Id. ¶¶ 11-12.) TCSO then moved for summary judgment before providing any responses.

## ANALYSIS

### A. Tort Notice Requirement

The Court agrees with TCSO that Plaintiffs failed to comply with the pre-suit tort notice statute and that this compels dismissal of their state law claims against TCSO.

State law requires a plaintiff pursuing state law claims seeking damages against a local government entity and its officers to file a tort claim at least 60 days before filing suit. RCW 4.96.020(1) & (4). "Filing a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages." RCW 4.96.010(1). The statute states: "No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof." RCW 4.96.020(4). During the sixty-day wait period, the statute of limitations is also tolled. RCW 4.96.020(4).

The claim "must be presented on the standard tort claim form" as maintained by the relevant governmental entity. RCW 4.96.020(3). But use of the form is not an absolute requirement, given that the statute only requires "substantial compliance": "With respect to the content of claims under this section and all procedural requirements in this section, this section must be liberally construed so that substantial compliance will be deemed satisfactory." RCW 4.96.020(5). TCSO incorrectly argues that the substantial compliance provision applies only to the content of the notice and that strict compliance with the time to present the claim form is required. (See Mot. at 4-5.) The cases TCSO cites predate a 2009 amendment to the state law, which expressly extended the "substantial compliance" provision to encompass both to the

substance and timing of the notice. See Bell v. City of Tukwila, No. C10-379Z, 2011 WL 1045586, at *1 (W.D. Wash. Mar. 21, 2011) (noting that the 2009 amendment to RCW 4.96.020 expressly allowed substantial compliance as to not just the content of the notice, but the timing of its presentment). Substantial compliance with the form and timing of the notice is adequate, particularly since the purpose of the notice is to allow the governmental entity time to review the claim, not to serve as a "gothcha." Id.

Plaintiffs failed to demonstrate substantial compliance with the pre-suit notice requirement. By August 2022, Plaintiffs' counsel knew that TCSO was a potential defendant and counsel knew of the requirement to file a tort claim notice, having already filed a tort claim with OPD. And although counsel sought leave to amend the complaint to name the TCSO in August 2022, counsel failed to send a claim notice to Thurston County until January 31, 2023, more than three months after filing the amended complaint. And Plaintiffs waited until March 29, 2023, to submit a tort claim using the County's form, and they did so only for Plaintiff Githinji. The record before the Court does not evidence any compliance with the pre-suit notice requirement. Plaintiffs had ample opportunity to serve the notice before filing the amended complaint and they have identified no reason to excuse their delay in serving the notice. The Court cannot conclude that Plaintiffs substantially complied with the tort claim notice requirement where they waited over three months after filing suit to provide notice. Although the Court would have forgiven Plaintiffs' decision not to use the County's form, Plaintiffs failed to show how they otherwise substantially complied with the pre-suit notice requirement. Given the absence of substantial compliance, the state law claims must be dismissed because the tort notice is a "condition precedent to the commencement of any action claiming damages." RCW 4.96.010(1).

The Court therefore GRANTS summary judgment in TCSO's favor on Plaintiffs' state law claims filed against it.

**B. No Evidence of Waiver**

Plaintiffs contend that TCSO waived the pre-suit notice defense by actively participating in the litigation and waiting more than five months after the suit was filed to move for dismissal. The Court disagrees.

Under Washington law, a defendant can waive a defense based on the tort claim requirement if it fails to timely enforce the requirement. King v. Snohomish Cty., 146 Wn.2d 420, 423 (2002). In King, the Court found that the Snohomish County failed to force compliance with the pre-suit tort notice where it only sought dismissal through a motion in limine on the eve of trial after forty-five months of litigation. Id. at 423. The Court explained that "a defendant may waive an affirmative defense if either (1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense." Id. The Court noted that "the doctrine of waiver is sensible and consistent with . . . our modern day procedural rules, which exist to foster and promote 'the just, speedy, and inexpensive determination of every action.'" Id. (citation omitted). This "prevent[s] a defendant from ambushing a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage. Id.

The Court disagrees with Plaintiffs that TCSO waived the defense by waiting too long to raise the issue. TCSO filed its Answer to Plaintiffs' Amended Complaint on November 11, 2022. It participated in discovery, including appearing at depositions and requesting the deposition of one of the named plaintiffs. But TCSO then asked Plaintiffs to stipulate to dismissal in January 2023 based on the lack of the claim notice. It then filed the Motion for Summary Judgment on

March 14, 2023. This record falls far afield from King, where the county in that action waited until the eve of trial to seek to enforce the pre-suit claim notice. Here, by contrast, TCSO waited only a few months after filing its answer to vet the issue with Plaintiffs and then the Court. While TCSO could have moved earlier for relief, the Court does not find the delay unreasonable. And TCSO's active participation in discovery remains consistent with the fact that it still faces federal claims Plaintiffs have asserted it. The Court therefore declines to find that TCSO waived the pre-suit notice.

**CONCLUSION**

TCSO has demonstrated that Plaintiffs failed to substantially comply with the pre-suit tort notice requirement of RCW 4.96.010 & -.020. Because the pre-suit notice is a condition precedent, the Court GRANTS summary judgment in TCSO's favor as to the state law claims filed against it. And while TCSO could have raised this defense more swiftly, the Court declines to find a waiver. The Court notes that TCSO remains a defendant in this action given the inclusion of federal law claims against it. And the Court notes that it has not assessed the Parties' arguments about the timeliness of Plaintiffs' claims against TCSO, as doing so is unnecessary to resolve the Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 12, 2023.

Marsha J. Pechman
United States Senior District Judge