# Exhibit 7

UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF WASHINGTON

_____

GABRIEL SHRIVER, DORCAS GITHINJI )
and JASON SHRIVER, a marital     )
community,                       )
                                 )
          Plaintiffs,            )
                                 )
     v.                          ) No. 3:22-cv-05138-MJP
                                 )
OLYMPIA POLICE DEPARTMENT,        )
TIFFANY COATES, JOSIAH LUTZ,     )
THOMAS MILAVEC, NICHOLAS SMITH,  )
JASON WATKINS, RYAN HIROTAKA,    )
BRYAN HOUSER, COREY JOHNSON,     )
VASILE KOVZUN, LEVI LOCKEN,      )
THURSTON COUNTY SHERIFF'S OFFICE,)
and DOES 1-10,                   )
                                 )
          Defendants.            )
_____

DEPOSITION UPON ORAL EXAMINATION

of

NICHOLAS SMITH

_____

Taken via Zoom Videoconference

DATE TAKEN:  January 19, 2023

REPORTED BY:  Julia Williams, CCR #2307

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 2

A P P E A R A N C E S

(All participants appeared via Zoom Videoconference.)

For the Plaintiffs:        GREGORY W. ALBERT
                           Attorney at Law
                           Albert Law PLLC
                           3131 Western Avenue, Suite 410
                           Seattle, Washington 98121
                           Greg@albertlawpllc.com
                           206/576-8044

For the Defendant
Olympia Police
Department:                 JOHN E. JUSTICE
                           Attorney at Law
                           Law, Lyman, Daniel, Kamerrer
                                     & Bogdanovich, PS
                           P.O. Box 11880
                           Olympia, WA 98508-1880
                           Jjustice@lldkb.com
                           360/754-3480

For the Defendant
Thurston County
Sheriff's Department:       RICHARD B. JOLLEY
                           MARGOT G. COTTER
                           Attorneys at Law
                           Keating, Bucklin & McCormack
                           801 Second Avenue, Suite 1210
                           Seattle, Washington 98104
                           Rjolley@kbmlawyers.com
                           Mcotter@kbmlawyers.com
                           206/223-9423

Also Present:              JULIE CARIGNAN
                           Thurston County Prosecuting
                                     Attorney's Office

                           TAMMY DEVLIN
                           Thurston County Risk Manager

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 3

                              I N D E X


EXAMINATION BY:                                          PAGE

MR. ALBERT.........................................4


MARKED FOR IDENTIFICATION:

Exhibit 1:   Documents re phone call to judge........53

Exhibit 2:   Officer Smith's 1/27/20 Case
             Supplemental Report.....................69

Exhibit 3:   Search Warrant..........................70

Exhibit 4:   MP4 file labeled DEFENSE VIDEO1.........73

Exhibit 5:   MP4 file labeled DEFENSE VIDEO2.........75

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 71

is, you know, you witnessed Jake Shriver grab Wanjiku Shriver's hand, and you also witnessed him strike her in the chest.  Was your reasons for deciding that you had probable cause to make an arrest based on anything prior to those events that you witnessed?

A.   No.

Q.   Okay.  Do you have reason to believe -- well, let me ask you this:  Do you have in your mind probable cause to believe that any domestic violence occurred before what you witnessed?

A.   Nope.

Q.   Okay.  Let's go to Exhibit Number 4.  Exhibit 4 is going to be -- well, let me ask you this first:  Have you reviewed any video prior to this deposition, video of the incident?

A.   Yes.

Q.   When did you review video?

A.   I know last -- last week.

Q.   Okay.  Did you review video prior to last week of the January 26th incident?

A.   Yes.

Q.   And when did you review it prior to last week?

A.   It had been sent to us by the prosecuting attorney way back when.

Q.   Okay.  Was there any kind of message sent with it

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 72

by the prosecuting attorney?

A.    I believe if that was the entire -- entirety of the video possibly.  I would have to re -- recover those messages.

Q.    You think there was a question from the prosecutor as to whether or not that was the entirety of the video?

A.    I believe so.

Q.    Okay.  And how did you answer that question?

A.    I don't know word for word how I answered it, but I know how I would answer it.

Q.    Well, how would you answer it?

A.    That it's not the entirety of the video.

Q.    Okay.  And when you say not the entirety of the video, do you mean it doesn't start where the video should start, it doesn't stop where it should stop, or there are things missing in between?

A.    There are -- things would be missing in between.

Q.    Okay.  What things did you notice are missing in between?

A.    The --

MR. JUSTICE:  Object to the form.

But you can answer.

A.    The specific -- obviously it's -- you can tell that -- where people are standing and number -- number of people that there's clearly things missing.

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 73

Q.    (By Mr. Albert)  Were there events that were depicted in your phone call to Judge Buckley that are missing from the video?

A.    Yes.

Q.    Okay.  Can you name what those are?

A.    Would be our observations of the crimes we had seen.

Q.    So when you say your observations of it, like the actual video of you observing the crimes being committed is missing from the -- from the video?

A.    Correct.

Q.    Okay.  So like your reactions to seeing those crimes is missing from the video?

A.    Yes, reactions and phrases by everybody, by all, however many people including the victim and suspect.

Q.    Okay.  Officer Coates testified that Jake Shriver's threats to let his dog out to bite your faces off, that's also missing from the video.  Is that -- is that your understanding of the video too?

A.    Yes.

MR. JUSTICE:  Object to the form.

You can answer.

Q.    (By Mr. Albert)  Okay.

Okay.  I'm going to play Exhibit Number 4 for you.

(Exhibit No. 4 marked.)

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 74

Q.   Officer Smith, do you see a video on your screen right now?

A.   Yeah, red -- a red car in the driveway?

Q.   Red car in the driveway.  That's the one.

A.   Yep.

Q.   And do you see how long this video is?  If you look over to the right side, it should have a time stamp here.

A.   Let's see.  I -- I see like one second is where it started.  Let me see if I can --

Q.   Let me use a player here.

A.   I can't get to that -- get to that part.  It looks like it might be covered by my Zoom, so I'm not sure if that's me.

Q.   Let me see if I can change the size or the shape of this video.  Let's see something else here.  Okay.  I'm just going to share my screen.

A.   I got it now.  It's -- does it show two minutes?

Q.   Yeah.  It should show two minutes on the far right side.

A.   Okay.  I see it now.  Yep.

Q.   Okay.  So I'm going to go ahead and play you this video.  I just want to make sure that this is the same video that you reviewed when you sort of made those conclusions.  I'm going to play it.  It's going to be a little bit boring,

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 75

but I'm just going to play it all the way through the first two videos.  Okay?

A.   Okay.

(Video playing.)

Q.   Okay.  Did I just show you the entirety of Exhibit Number 4?

A.   Yeah, was that two minutes?  It got covered again, so.

Q.   Oh, yeah, let me just go ahead and take it all in. You should see the two-minute mark right there on the right side now.

A.   Gotcha.  Okay.

Q.   Okay.  So you just watched the entirety of it, right?

A.   Yes.

Q.   Okay.  And then the next one I'm going to show you would be Number 5.  Okay.  So this is Exhibit Number 5, and I'm going to show you this.  Again, it's two minutes.  I'm going to show you the entirety of this one too.

(Exhibit No. 5 marked.  Video playing.)

Q.   Okay.  Did you see that come to an end there?

A.   Yes.

Q.   At the two-minute mark?  And so that would be -- I don't know why that's Exhibit 4.  That's Exhibit 5.  Sorry about that.  Okay.  So it sounds to me like the incidence

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 76

where he grabbed her by the hand and struck her across the chest would have been sometime during -- in between the events that occurred at the very beginning of Exhibit Number 4 and at the end of Exhibit Number 5; is that fair?

MR. JUSTICE:  Object to the form.

But you can answer.

A.   No.  It would have happened -- yeah, in between 4 and 5.

Q.   (By Mr. Albert)  Okay.  In between the beginning of 4 and the end of 5, right?

A.   Yes.

MR. JUSTICE:  Object to form.

Q.   (By Mr. Albert)  Okay.  So I'm going to play 4 for you, and I want you to just tell me if there's a point at which the video cuts off and does not accurately depict what was happening.  So here's 4.

MR. JUSTICE:  And I'm just going to object to the form of this question.

But, Officer, you can answer.

Q.   (By Mr. Albert)  Okay.  So I'm going to go ahead and play it for you, and if it looks like something's been edited out or if there's a point in which something's heard that we're not seeing on the video, I just want you to stop me there.

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 77

MR. JUSTICE:  Object to the form.

(Video playing.)

A.  Can you pause it for a second?

**Q.  (By Mr. Albert)  Absolutely.  Please let me know if you need me to pause.**

A.  I just -- a couple seconds ago she was out of screen.  Is she out of screen in the entire -- in the video?  I just want to make sure I'm watching the whole video.

**Q.  Yeah, let me back up.  I'll back up to 1:29 and make sure we have --**

A.  I'm trying to -- I can't view the time again.  You can make it small, whatever's easiest.

**Q.  Okay.  So we're at 1:30 right now.  I'm just going to start at 1:30.**

**(Video playing.)**

A.  Okay.  That's better.

**Q.  Oh, I don't think I went back far enough, did I?  Let's go back to 1:24.**

A.  Yeah.  So she's out of screen on your computer, right?

**Q.  No.  I can see the top of her head.  You can't see the top of her head?**

**(Video playing.)**

A.  I can -- I can now.  Okay.  I just want to make sure we're looking at the same thing.  Okay.  Perfect.

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 78

(Video playing.)

Q.   Okay.  So we -- we saw that all the way through, and I just want to see if there's anything that appears to you to be edited out or that should be in the video that's not in the video?

MR. JUSTICE:  Object to the form.

But you can answer.

A.   That still looks fairly -- fairly normal.

Q.   (By Mr. Albert)  Okay.  So that's Exhibit 4, and I'm just going to go ahead and play the last second so we know where it leaves off.

(Video playing.)

Q.   Then I'll play Exhibit 5.

(Video playing.)

Q.   Okay.  You see Exhibit 5 on your screen?

A.   Yep.

(Video playing.)

A.   It's already.  It's already missed the event.

Q.   Okay.  So the -- the events that we're talking about would have occurred between Exhibits 4 and 5?

A.   Correct, and that's clear based on if you look at each officer and where we're at.  I'm now on the porch, which was not true at the end of 4.

Q.   Okay.

A.   Officer Milavec's also completely on the porch it

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 79

looks like.

Q.   I see.  Okay.  So you're completely on the porch, and you're the one on --

A.   I am the one with the flashlight right there and the hat.

Q.   Got it.  Okay.

A.   And obviously how I'm there right now and how I was on the other video's impossible.

Q.   Okay.  Now let's go back to Exhibit 4.

A.   I'm completely behind the post with one leg on the porch.

Q.   Let's see if I can find a better way to switch back and forth without having to --

A.   So.

Q.   Okay.  So here's Exhibit 5.  Let's go back to Exhibit 4.

A.   Perfect.

Q.   Actually, I'm going to pop my screen, see if I can start one.

(Video playing.)

A.   Wait.  It skips a significant step.

Q.   Okay.  So we're on Exhibit 4 again.  Okay.  So we --

(Video playing.)

Q.   Okay.  So you've got a flashlight pointed somewhat

Page 80

at the door and a leg on the porch at the end of Exhibit 4.

A.    Correct.

Q.    Officer Kovzun appears to be stepping onto the --

A.    Yeah, so Officer Milavec's on the stairs.

Q.    Oh, Milavec.  Excuse me.  Yeah.  Gotcha.  Okay.
He's on the stairs.  And Officer Coates is still standing at
the crack of the door right there?

A.    Correct.

Q.    And then when we get to Exhibit 5 --

(Video playing.)

A.    Yeah.

Q.    -- she's completely on the porch, he's completely
on the porch, and she's still in the same position, right?

A.    No.  She's -- she's -- she's in a completely
different position now.  So she's backed away --

Q.    That's right.

A.    -- from where she was, which is consistent with
what we observed.  We're going to back away for a second.

Q.    Okay.  So there she is right there at the end of
Exhibit 4, right?

(Video playing.)

A.    Yep, yep.

Q.    Then I go to Exhibit 5, and she's still standing
pretty much in the same position, right?

(Video playing.)

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 81

MR. JUSTICE:  Object to the form, asked and answered.

But you can answer again.

A.    If -- I believe she has moved.

Q.    (By Mr. Albert)  Okay.  Same left hand on the door though; is that fair?

A.    Yeah.  I mean we're -- the two other officers in it have completely moved in that --

Q.    Sure.  One of them had one foot on the porch.  Oh, that was you.  You had one foot on the --

A.    I -- yeah, I've moved completely onto the porch and in front of the post, and Officer Milavec's now on the porch.

Q.    Okay.  So then all of the events that we would have discussed that you witnessed that constitute a probable cause for a domestic violence finding would have occurred between the time you went from one foot on the porch to two feet on the porch and Officer Milavec moved onto the porch; is that right?

A.    Correct, if there was video of the event, yes.

Q.    Got it.

A.    You would see all of that.

Q.    Okay.  Got it.  Okay.  Got that.

MR. ALBERT:  Well, I think we're pretty close to the end.  Why don't we just take a break, and I'll see if I

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 82

can consolidate whatever's left, and chances are we won't really need to cover anything else.  So what do you guys say?  Five minutes?

MR. JUSTICE:  Sounds good.  Thank you.

(Recess was taken from 3:35 to 3:43 p.m.)

MR. ALBERT:  Okay.  We're back on the record.

**Q.   (By Mr. Albert)  Okay.  I really just have a handful of pretty quick lightning-round questions for you.**

**Could you clearly see Wanjiku Shriver when she was -- both times that she was assaulted by Jake Shriver?**

A.   Yes.

**Q.   Okay.  Could you clearly see the assaults both times?**

A.   Yes.

**Q.   Were you guys trying to coax her out of the house at the time that he did assault her?**

A.   To get her to come talk to us, yes.

MR. JUSTICE:  Object to the form.

But you can answer.  Sorry.

A.   To get her to come speak with us, yes.

**Q.   (By Mr. Albert)  Okay.**

A.   She was at the front door obviously.

**Q.   Okay.  So you were already aware of her presence by the time that he started assaulting her, right?**

A.   We could see her.

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 83

Q.    Okay.  How much content would you say was missing between Exhibits 4 and 5?

MR. JUSTICE:  I'm going to object to the form.

But you can answer.

A.    I don't have a specific amount, but you can clearly tell there's a significant portion of everything.

Q.    (By Mr. Albert)  Well, I can't clearly tell that. I'm just trying to ask you how much you --

A.    Well, enough for me to make significant steps, us to be speaking differently all of a sudden, which would have made no sense in the first video, Officer Milavec standing --

Q.    Let's talk about -- how do I pronounce his name? Is it Milavec?

A.    Uh-huh.

Q.    Okay.  Let's talk about how you're speaking distinctly differently.  I'm going to go ahead and play Exhibit Number 5 for you again, and I'm -- now, you're on the porch.  It looks like you've taken another -- you've got both feet on the porch, and then it looks like Officer Milavec is either on the stairs or the porch or on the porch, right?

A.    You can tell he's on the porch, yeah.  He's a bit taller than he was.

Q.    Okay.  And then I'm going to go ahead and play --

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 84

I want you to listen really closely to the first seven seconds of the audio.

A.   Mm-hmm.

(Video playing.)

Q.   Did you hear Officer Milavec right there?

A.   I couldn't hear clearly.

Q.   Okay.  I'm going to -- I'm going to play it again. Maybe it's kind of tough to hear.

(Video playing.)

Q.   Did you hear him say, Somebody?

A.   I -- if that's what he said, but I can hear him say about a word, yeah.

Q.   Did you hear the word somebody?

A.   I don't hear specifically that word, but --

Q.   See if you can hear that, if you just listen to it really closely.

(Video playing.)

Q.   Could you hear it that time?

A.   I don't know if that's him saying that.  I think that might be me saying that.

Q.   Okay.  And then do you hear him say, Yeah, that's my wife, right after that?

(Video playing.)

MR. JUSTICE:  Object --

Q.   (By Mr. Albert)  Sounds like, Everything's fine.

Page 85

**Did you hear that?**

MR. JUSTICE:  Object to the form.

A.   I hear, Everything's fine, yeah.

Q.   (By Mr. Albert)  Okay.  Listen right before that where he says -- where -- at least where I'm representing that he says, Yeah, it's my wife.  Everything's fine.

(Video playing.)

Q.   Did you hear that?

A.   Yeah, I hear -- I hear that, and I think there's -- somebody is the word that said -- I believe that's me saying that.

Q.   Okay.  Gotcha.  When you say somebody, are you referring to Wanjiku Shriver?

A.   I would guess so, yes.

Q.   Okay.  I think that's all the questions I have.

MR. ALBERT:  Anybody else, questions?  I kind of doubt it.

MR. JOLLEY:  No questions.

MR. JUSTICE:  All right.  We'll reserve and sign.

(Signature was reserved.)

(The deposition adjourned at 3:46 p.m.)

Nicholas Smith, 1/19/2023
Shriver, et al. v. Olympia Police Department, et al.

Page 86

C E R T I F I C A T E

STATE OF WASHINGTON -- COUNTY OF KING

I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010, authorized to administer oaths and affirmations in and for the State of Washington, hereby certify the following:

The foregoing deposition upon oral examination of the witness named herein was taken stenographically before me and thereafter transcribed under my direction.

The witness before examination was first duly sworn by me to testify truthfully.

The transcript of the deposition is a full, true and correct transcript of the testimony including questions and answers and all objections, motions, and exceptions of counsel made and taken at the time of the foregoing examination.

I am neither attorney for, nor a relative or employee of any of the parties to the action.

I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially interested in the said action or its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand this 6th day of June 2023.

_____

Julia Williams, CCR #2307
License effective until May 9, 2024
Residing at Seattle, Washington