UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DORCAS GITHINJI and JASON SHRIVER,<br><br>                    Plaintiffs,<br><br>        v.<br><br>OLYMPIA POLICE DEPARTMENT, et al.,<br><br>                    Defendants. | CASE NO. C22-5138 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE |

This matter comes before the Court on Plaintiffs' Motion to Exclude. (Dkt. No. 76.) Having reviewed the Motion, the Response (Dkt. No. 82), the Reply (Dkt. No. 85), and all supporting materials, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

This case arises out of an incident at Plaintiffs' home that led to the arrest of Plaintiff Jason Shriver and the detention of his wife, Plaintiff Dorcas Githinji, by the Olympia Police Department (OPD). With the dismissal of excessive force claims, the case focuses on a claim

1  that OPD and the named officer defendants lacked probable cause to arrest Shriver and detain

2  Githinji. Plaintiffs argue that the sole disputed factual issue is whether OPD officers witnessed

3  Shriver "strike" or "imprison" Githinji when they investigated a possible domestic violence-

4  related 911 call. (Mot. at 2.) As Plaintiffs argue, if the OPD officers "did witness a crime, then

5  there is no dispute they properly followed procedure and arrested [Shriver]" but if not, "then

6  [OPD officers] violated the Fourth Amendment as a matter of law." (Id.) Plaintiffs concede that

7  OPD officers had probable cause to investigate the 911 domestic-violence call. (Id.)

8        Against this background, Plaintiffs seek to exclude two of Defendants' experts under

9  Rules 402, 403, and 702. The Court briefly reviews the expert reports at issue.

10        First, Colleen Wilson opines on whether the Defendant OPD officers responded in a

11  manner consistent with "their operating procedures and with Washington State Law as well as

12  the training provided to law enforcement officers in Washington." (Dkt. No. 68-5 at 7.) Wilson's

13  report also contains many observations and commentary about the weight of the evidence. (Id. at

14  5-7.) In response to Plaintiffs' Motion, Defendants state they "will not be calling Colleen Wilson

15  during trial" and asks the Court to find the Motion moot as to her report. Plaintiffs refuse to

16  concede the issue is moot, and ask the Court to exclude Wilson from providing any opinions in

17  the case.

18        Second, Chris Nielsen provides four distinct opinions. He opines that a reasonable police

19  officer facing the same circumstances as Defendants faced: (1) had probable cause to investigate

20  the 911 call (Dkt. No. 68-8 at 27-28); (2) had probable cause to arrest Shriver for unlawful

21  imprisonment and assault in the fourth degree (id. at 28-29); (3) had probable cause to seek a

22  search warrant to facilitate the arrest of Shriver (id. at 29-30); and (4) had probable cause to call

23  the Thurston County Sherriff's Office SWAT team (id. at 30-31). The Court notes that Plaintiffs

24

do not dispute that Defendants had probable cause to investigate the 911 call. (Mot. at 2; Reply at 2-3.)

## ANALYSIS

### A. Legal Standards

The Court briefly reviews the evidentiary standards at issue.

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if": (1) the technical or specialized knowledge will help the trier of fact understand the evidence; (2) the expert testimony is "based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. To assess an expert's reliability, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993)). "Rule 702 contemplates a broad conception of expert qualifications." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (quotation and citation omitted). "[F]ar from requiring trial judges to mechanically apply the Daubert factors—or something like them—to both scientific and non-scientific testimony, Kumho Tire heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Additionally, the Court may exclude evidence that is irrelevant under Rule 402. And the Court may exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.

### B. Motion Moot as to Wilson

The Court agrees with Defendants that the Motion as to Wilson is moot given Defendants' concession not to call Wilson at trial. The Court understands Plaintiffs' concern that Defendants have not expressly "formally withdrawn" Wilson's opinions in full. (Reply at 1.) But the Court does not share Plaintiffs' concern. The Court construes Defendants' concession that Wilson will not testify at trial as a concession that her opinions shall not be used for any reason in this case. The Court will hold Defendants to that concession, which moots the Motion. No further relief is necessary where Wilson and her opinions will not be used in this action. On this basis the Court DENIES the Motion as MOOT.

### C. The Court Excludes Nielson's Report

The Court agrees with Plaintiffs that Nielson's opinions must be excluded.

An expert may generally testify about the procedures, policies, and standards used by law enforcement. See Davis v. Mason Cnty., 927 F.2d 1473, 1484–85 (9th Cir. 1991) (testimony of police practices expert was admissible). And Federal Rule of Evidence 704(a) clarifies that "[a]n opinion is not objectionable just because it embraces an ultimate issue." But "expert witness cannot give an opinion as to [their] legal conclusion, i.e., an opinion on an ultimate issue of law." Hangarter, 373 F.3d at 1016 (9th Cir. 2004). "[W]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." See United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017) (quotation omitted). As concerns this case, a jury, not an expert, must decide whether officers had "probable cause" to perform an arrest. See Torres v. Los Angeles, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (district court abused its discretion when it allowed defense expert to testify that there was probable cause to arrest the plaintiff). And the risk of usurping the jury's

role is particularly acute when the expert seeks to testify using terms with "specialized meaning in law" and where he adds his own subjective view of the disputed evidence surrounding the incident. See Diaz, 876 F.3d at 1199.

The Court here finds that Nielson's opinions should be excluded for several reasons. First, Nielson's expert report is not helpful to the jury because no expert is needed for the jury to decide the purely factual issue of what was seen or not seen by the officers. In his report, Nielson bases his opinions on his own view of disputed facts, for example, that: (1) Shriver was "physically preventing [Githinji] from leaving the residence" (Report at 19); (2) Shriver "prevented his wife from exiting" the home (Report at 26); (3) Shriver "attempted to forcefully prevent [Githinji] from cooperating" with the Officers (Report at 26); and (4) Githinji was "timid, scared, and afraid" of Shriver (Report at 27 (quotation omitted)). Nielson's opinions all intrude on the role of the jury to determine what happened during the encounter with the Officers and determine whether there was probable cause to perform the arrest and detention at issue. See Torres, 548 F.3d at 1214 n.11. This determination requires weighing the evidence and making an ultimate judgment as to credibility of the witnesses and a review of all of the facts surrounding the Officers' response at Plaintiffs' residence. Nielson's report and opinions try to make those determinations for the jury, which is improper and, more importantly, unhelpful. Rule 702 applies squarely to exclude these unhelpful opinions that improperly intrude on the jury's exclusive role in this case. See Diaz, 876 F.3d at 1197. Second, Nielson's first opinion is no longer relevant. Plaintiffs concede there was probable cause to investigate the 911 call and the decision to call the SWAT team is not relevant given the dismissal of the excessive force claims. On these two independent bases, the Court GRANTS the Motion and EXCLUDES Nielson's report and any of his opinions from this action.

**CONCLUSION**

Though the Court GRANTS in part and DENIES in part Plaintiffs' Motion, the Court effectively finds that both of Defendants' expert witnesses may not present their opinions in this case. First, Defendants have withdrawn Wilson as an expert this case. For this reason, the Court DENIES the Motion as MOOT as to Wilson. Second, Nielson's report impermissibly provides opinions on issues that the jury alone must make, and on one issue that is not relevant. The Court excludes Nielson under Rule 702 and Rule 402 (in part), and GRANTS the Motion as to Nielson.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 31, 2024.

Marsha J. Pechman
United States Senior District Judge